## No. 159.

### BUTCHERS UNION SLAUGHTER HOUSE & LIVESTOCK LANDING CO. *v.* GUILLAUME MOTHE.

Where an agreed statement of facts is submitted to the Appellate Court, it cannot go beyond said statement by considering evidence introduced in the lower court, (whether oral or written), which is not made part of said statement by reference or otherwise.

A charter providing for the establishment of a business in a place prohibited by municipal ordinance, presupposes the intention of said incorporators to have the existing ordinances changed to permit said business, and is therefore not necessarily illegal.

Where a person subscribes for shares of stock in a corporation, said agreement is enforceable at law and he may be required to pay for said shares of stock.

A corporation is not bound by representations of one who is not an officer, director or specially authorized to bind it.

*B. R. Forman,* attorney.

*Branek K. Miller,* attorney.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

Plaintiff, a corporation duly authorized under the laws of this State, sues defendant for $500 as a non-paying subscriber to 5 shares of its capital stock at $100 per share. Defendant's first pleading was an exception setting up that the charter and organization were for a purpose prohibited by law, and hence illegal; and that subscription therein cannot be enforced. This exception being overruled by the lower court, defendant answered admitting that he agreed to take a portion, or subscribe to the capital stock of plaintiff, on the face of representations made to him by the plaintiff and his agent or agents, that the purpose of plaintiff was to erect and operate a slaughter house according to a particular plan or prospectus explained and exhibited; that subsequent to his said agreement to subscribe to the capital stock of plaintiff, said plan or prospectus was changed without the consent of defendant, whereby defendant was freed from his engagement to take said stock for the reason that plaintiff engaged in and entered upon an enterprise

different from that to which the defendant agreed to subscribe; that the plan by which plaintiff has erected and is erecting a slaughter house is entirely inadequate for the purpose to which defendant subscribed. Later a supplemental answer was filed setting up that since the institution of the suit the charter of the plaintiff has been amended without defendant's consent so as to make radical changes in the nature of the company.

## I

The statute relied upon by defendant as striking with nullity the charter of plaintiff is Act No. 118 of 1869. This statute contains several sections, of which the first makes it unlawful after June 1st, 1869 to land, keep, or slaughter cattle, or establish any stock landing yards, pens, abbatoirs or slaughter houses within the City of New Orleans, or the parishes of Orleans, Jefferson and St. Bernard, or at any point or place on the east bank of the Mississippi within the corporate limits of New Orleans, or at any point on the west bank of the Mississippi river about the present depots of the N. O. Opolousas & G. W. R. R. Co. except that the Crescent City Stock Landing and Slaughter House may establish themselves at any point or place as hereinafter provided, etc. The third section authorizes said Crescent City Stock Landing and Slaughter House Company, to establish its landing yards, abbatoirs, etc., at any point or place on the east bank of the Mississippi river within the Parish of St. Bernard, or in the corporate limits of the City of New Orleans, below the U. S. Barracks, or at any point on the west bank of the said river below the present depots of said, N. O. O. & G. W. R. R. Co.

It is urged that the purpose of this corporation is to build within the limits prohibited by the legislative act above mentioned. The case comes up to us on a statement of facts, and this statement says nothing about the proposed location of the slaughter house to be erected under the charter and organization of plaintiff. It is urged that, under the rules of this court, and the clear wording of Arts. 602 and 603 C.P., it is only the oral testimony that is to be covered by such statements

and that the charter itself being in the record, we must examine it. We cannot agree with defendant in this view of the law. It is true article 602 commences with the words "when the depositions of witnesses have not been taken in writing in the inferior court, etc., that the governing provisions of the articles is to the effect that the party appealing may call on his adversaries to draw up jointly with him a statement of the facts proved in the cause, etc." It is clear from the verbiage, last quoted, that the statements must cover all the facts proven, whether the establishment of such facts was by writing or parole, or both. We have therefore no right to go beyond the statement even to examine documents in writing, which have formed part of the original proof, unless such documents are made part of the statement, by reference or otherwise. The principle applicable to such writings is the same as that which would exclude us from the consideration of the written depositions of particular witnesses. In either case such evidence is only partial, and may have been modified or contradicted by other proof not before us. It is necessary that the appellate court must have all the evidence tendered below, in order properly to review the decision upon the facts. If the superior tribunal cannot have such evidence in its entirety, it should consider none, but must accept the findings of fact made up from all that was tendered and coming up from the inferior court.

Even, however, if we were to consider the charter in question, it does not appear that the plaintiff corporation must be considered illegal. It may be, as is contended, that the said corporation contemplated creating its slaughter houses, etc., within the prohibited limits as such limits are by Act 118 of 1869. The constitution of 1869 abolished monopolies, the Crescent City Stock Landing Slaughter House Co., included. See Art. 258, 248, gives to the police juries of the several parishes, and to the constituted authorities of incorporated municipalities the right of regulating and locating slaughter houses within these limits, although at the date of plaintiff's charter, the erection of a slaughter house at Caffin Lane may have been

within the prohibition of Act 118 of 1869, it does not appear that the intention was to commence work or business before the municipal authorities had fixed a location for their abbatoirs, etc. We do not consider, that the mere fact that an association is formed to conduct any particular business within limits which by existing regulations are prohibited, when such limits may be altered by municipal legislation, implies that the purpose is to proceed in defiance of the law. Rather would we hold, that the intention is first to secure the legislative action necessary and then to commence operation as seems actually to have been done in this case in which event the corporation can not be considered illegal.

Upon the second branch of the case, the judge *a quo* certified that the subscription of defendant was solicited by one Paul Lacroix, who was not an officer, or director of the corporation, or specially authorized to solicit for or bind it; that Lacroix did exhibit to Mothe, at the time of the subscribing, a plan which he (Lacroix) desired the company to adopt; that said plan was not adopted, and that defendant had not subscribed to the stock in consideration of the adoption of such plan.

This statement of the facts, in our opinion, effectually disposes of this defense. Every person concerning themselves in extending the subscription list of a corporation is not necessarily a solicitor for the same, as the term solicitor in such connection is known to the law. A man may have faith in the future of such an association, or he may desire to obtain a certain grace, or influence in its affairs; in either of which case he might place the prospectus before his friends and seek to influence them to invest in the stock of the corporation. Under such circumstances, if his arguments being convincing, and he sells subscriptions, when he brings the latter to the company, he is acting as the agent of his friend and not of the association; the latter, in accepting the subscribers, extends no ratification to the acts and declarations of a mandatary, but simply gives its consent to a proposition, as a result of which a contract springs up.

Nor, can everything said upon the occasion of the subscription relative to the future prospects, purposes, etc., of the proposed company be held as representations; and as it were warranted.  First dealings with such matters usually place all material conditions in the writings of a charter or the subscription paper, and, unless the statements of the agent have been upon some matter of importance so substantial and at the same time so false as to constitute error or fraud, destructive of the contract, it would be dangerous and unfair as well as illegal to accord to them the consideration of stipulations.

### III

Under the laws of this state, the stockholders of any incorporated company may alter its charter however with the consent of the shareholders present at a meeting formally called for that purpose.  There seems to be no complaint that any of the formalities of the law, provided for such cases have been ignored, or that the requisite vote was not had.  The pleadings, and statement of facts puts the defendant before us as an actual subscriber to the stock of the company, and not simply as one who had agreed to purchase or to subscribe to shares.  If he were a subscriber, the fact that he was refusing to pay the sum agreed did not add to his privileges or increase his immunities.  The other stockholders had the right to avail themselves of the law, to alter the charter; and the minority were bound, whether they had paid for the shares or not.  We do not consider defendant, as we have already intimated, in the light of one who has simply agreed to take or subscribe to stock.  The circumstances of this transaction are not detailed in the statement of facts, beyond which we cannot go.  That statement, however, declares that, the defendant, Guillaume Mothe, subscribed in writing to the capital stock of the plaintiff for five shares, etc.

Under such conditions, we cannot comprehend what is meant by requiring the tendering of stock as a prerequisite to this suit or to the inauguration of the proceedings for alteration of charter.  Possibly certificates of shares are meant; but

if so, to hold that any tender of these was essential is to confuse them with the contract itself of subscription. Such certificates are not the contract, nor even the evidence thereof; the charter is the proof of the agreement. The certificates are simply writings issued to show the relation of him who holds them towards the company or its capital. They may be considered in the nature of title deeds to property wherein the law requires no such deeds to create or preserve ownership. The rights of a shareholder springs from the charter and certificates of stock may well be omitted altogether without impairing such right. We therefore do not consider that the company was under obligation to search up its subscribers in order to force certificates upon them; or that the essential rights of either party were affected one way or the other, by the non-delivery of such certificates. All that was required of plaintiff, if the charter or other laws provided for the issuance of such certificates, was to furnish them to the defendant if and when he chose to demand them. The judgment appealed from is in our opinion correct, and it is hereby affirmed with all costs.